

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-20-00486-CR

Jemadari Chinua **WILLIAMS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B19-346
Honorable Rex Emerson, Judge Presiding

### OPINION ON MOTION FOR REHEARING

Opinion by:     Liza A. Rodriguez, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: October 19, 2022

REVERSED AND REMANDED

On April 27, 2022, we issued an opinion and judgment in this appeal. The State then filed a motion for rehearing. We deny the State's motion. However, so that we may clarify the judgment in this appeal, we withdraw our prior opinion and judgment, and substitute this opinion and judgment in their place.

After a jury trial, Jemadari Chinua Williams was convicted of Aggravated Promotion of Prostitution–Enhanced and was sentenced to forty years of imprisonment. Williams was

represented by appointed counsel through the guilt/innocence phase of the trial. He then invoked his right to self-representation, and after being admonished about the risks of self-representation, represented himself during the punishment phase. Williams later filed a pro se notice of appeal. To ensure Williams was properly admonished, we abated this appeal and ordered the trial court to conduct a hearing to fully admonish Williams of the dangers and disadvantages of self-representation on appeal. We then reinstated this appeal and accepted the trial court's recommendation, made after fully admonishing Williams, that Williams be allowed to proceed pro se on appeal. In his pro se brief, Williams brings various issues. Because we hold Williams was entitled to notice in the indictment of the specific acts on which the State intended to rely, we reverse the trial court's judgment and remand the cause with instructions to dismiss the indictment.

## SUFFICIENCY OF THE EVIDENCE

Williams argues the evidence is insufficient to support his conviction for aggravated promotion of prostitution because the State failed to prove the use or presence of two or more prostitutes.[1] In assessing the legal sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). "The jury is the sole judge of the weight and credibility of the evidence." *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021). "When considering a claim of evidentiary insufficiency, we must keep in mind that a juror may choose to believe or disbelieve all, some, or none of the evidence presented." *Id*. "Further, while jurors may not base their decision

---

[1]Williams also argues that the trial court erred in denying his motion for directed verdict. A challenge to a trial court's denial of a motion for directed verdict is reviewed under the same standard used to review a sufficiency challenge. *Hines v. State*, 383 S.W.3d 615, 623 (Tex. App.—San Antonio 2012, pet. ref'd).

on mere speculation or unsupported inferences, they may draw reasonable inferences from the evidence." *Id*. "The evidence is sufficient to support a conviction, and thus the jury's verdict is not irrational, if 'the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict.'" *Id*. at 655-56 (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). "When faced with conflicts in the evidence, a reviewing court shall presume that the fact finder resolved those conflicts in favor of the verdict and defer to that determination." *Id*. at 656.

"We measure the sufficiency of the evidence against the hypothetically-correct jury charge, defined by the statutory elements as modified by the charging instrument." *Id*. Pursuant to section 43.04 of the Texas Penal Code, a person commits the offense of aggravated promotion of prostitution if the person "knowingly owns, invests in, finances, controls, supervises, or manages a prostitution enterprise that uses two or more prostitutes." TEX. PENAL CODE § 43.04(a).[2] A person commits the offense of prostitution "if the person knowingly offers or agrees to receive a fee from another to engage in sexual conduct." *Id*. § 43.02. Although not defined by the penal code, "prostitution enterprise" has been construed by the court of criminal appeals to mean "a plan or design for a venture or undertaking in which two or more persons offer to, agree to, or engage in sexual conduct in return for a fee payable to them." *Armentrout v. State*, 645 S.W.2d 298, 302 (Tex. Crim. App. [panel op.] 1983).

According to Williams, the evidence was insufficient to show the use of two or more prostitutes, because "none of the women the State attempts to infer to be prostitutes ever engaged in, offered to engage in, or agreed to engage in prostitution." Williams emphasizes that at the

---

[2]The jury charge followed the statutory language and instructed the jury to find Williams guilty if it found from the evidence beyond a reasonable doubt that on or about April 5, 2019 in Kerr County Williams "knowingly owned, invested in, financed, controlled, supervised, or managed a prostitution enterprise that used at least two prostitutes."

"scene of [his] arrest, all four women who were present clearly articulated to officers that they were not prostitutes, nor had [any] intention[] to commit prostitution." In response, the State points to the following evidence at trial:

(1) Investigator Cliff Hirl, who at that time was with the Fredericksburg Police Department, testified that he received information from Investigator Jeff Purvis with the Kerrville Police Department that one of their informants knew about an individual bringing female prostitutes to the Kerrville area. Through the informant Hirl obtained Williams's phone number. When Hirl contacted Williams, he pretended to be a rancher in the Kerrville area named "Scott." Hirl testified that in their first conversation, Williams "almost immediately started talking about services and the females that he could provide me." According to Hirl, they "started talking roughly—just rough prices, if I remember correctly, but nothing concrete, an idea of how many girls [Hirl] would want for the night."

(2) State's Exhibit 24, a CD of recorded phone calls between "Scott" (i.e., Investigator Hirl) and "Jay" (who was identified as Williams by Hirl) was admitted in evidence. In addition to the recorded phone calls, text messages between Investigator Hirl and Williams were admitted in evidence. In the recorded conversations, Williams said he was "not a pimp," but a "booking agent" who "works on commission." Investigator Hirl texted Williams he wanted three "slenderish" women who were "willing to have group sex just as much as singles." Williams responded that he would "have a selection for u [sic] to pick from shortly." Williams advised Hirl about the "donation" required for the services provided:

> Hey Scott, tbh [sic], the average donation a girl receives around these parts is 200/hr . . . considering the commute, it would make sense on both ends, to book an 8 hr [sic] block of time. That gives u [sic] plenty of time to relax and let things develop naturally, translating to a more pleasurable experience all the way around. For that, plus the 2 hours of travel, a thousand for each girl, half on arrival, the other half on departure, equals to a 50% savings on what you would pay 2 or 3 hours at a time. A thousand dollars'll [sic] sound a lot more enticing to these girls than a couple hundred at a time. Paying them a flat fee, hlf [sic] up front hlf [sic] when they leave, keeps em [sic] honest with their interaction and minimizes the guile. Then if u [sic] decide to tip them further it keeps all the attitudes of entitlement to a minimum, because it's unexpected. An additional 2 grand, on arrival, would cover rental of a vehicle, fuel, wages for myself, a driver, and security, there and back.

> Williams also texted that "[a]ny party favors . . . provided at said event would have to be purchased on a Point of Sale basis." Hirl replied with the following:

> ok ill [sic] pay 2k up front to the girls, 2k upfront for your services, and 2k on the back end to your girls, but considering im [sic] throwing up 6k for the girls, I want one white and one Hispanic looking to party.

Hirl then detailed the sex acts he wanted the "girls" to perform and stated that he also wanted the "girls" "to bring some powder to make the party all that much better." Hirl texted, "for that id [sic] pay going rate for a few grams to have fun."

(3) According to Investigator Hirl, Williams then sent him explicit photos of different women. These photos were admitted in evidence.

(4) Investigator Hirl further testified he provided Williams with a real address in Center Point, Texas where Williams was to bring the females that Hirl had selected. On the day in question, Williams called Hirl to say they were on their way. Hirl testified that he received a phone call from Williams later; Williams was unable to find the address and was "out in the middle of nowhere." Hirl testified he tried to guide Williams to the ranch, but then told Williams he would come down and meet Williams and the women at the ranch's gate. Hirl testified that other officers involved in the operation were waiting at the address given to Williams and had seen Williams's vehicle pass them. According to Hirl, Williams called him again, saying that he had pulled off the side of the road and would wait for Williams there. Hirl then told the other officers to go ahead with the arrest. Hirl testified,

> It didn't take but seconds, and I could hear the arrest team. In fact, I could hear who I knew was Investigator Purvis yelling out commands for showing hands, pulling people out of vehicles. Just before that—just before I heard the officers say that, I heard who I believe . . . was Maria, but I heard one of the female voices say it was a setup . . ., and then that's when I heard the arrest team start to give commands.

(5) Investigator Purvis testified that on the day of the arrest, Investigator Hirl had let his team know when Williams was en route and provided a vehicle description of a "red Jeep." After a red jeep passed officers who were stationed at the address given to Williams, Purvis was advised by Hirl that Williams was lost. Purvis was able to listen to the conversation between Hirl and Williams. He heard Hirl tell Williams that Hirl would come out to meet Williams. Hirl then told Purvis that "the suspect is parking now." According to Purvis, he then saw a red Jeep park and turn off its lights. Purvis saw a "black male get out of a vehicle with a while female." Purvis testified he called the marked units to approach. The black male and white woman were detained, along with three other women who were inside the Jeep. According to Purvis, a search of the Jeep and the individuals yielded "some heroin, syringes, and some pills." As a result of a search incident to an arrest, the officers found "methamphetamine and a methamphetamine pipe" on Williams.

(6) Like Investigator Hirl, Investigator Purvis identified Williams in open court as the person arrested at the scene. Purvis also identified the women pictured in State's Exhibits 21, 22, 23, and 24 as the "four females [who] were arrested" at the scene.

(7) Investigator Purvis testified the four women arrested were Julia Nicole Anderson, Nichole Mendoza, Maria Luna, and Chelsea Hogan. According to Purvis, during his interviews with the women, one of them described Williams as "being a pimp" and said "they were going to try to come up [to Kerrville] and make some money." Purvis also testified that the women were "very uncooperative" and some denied being prostitutes.

According to Williams, because there is evidence some of the women claimed to not be prostitutes at the time of their arrest, he argues the jury had no discretion but to find they were not prostitutes and thus he was not guilty of the offense charged. However, there was other evidence at trial, including phone conversations and text messages between Investigator Hirl and Williams, along with Williams and the four women arriving at the appointed location and time as detailed in those communications between Hirl and Williams, from which the jury could infer that the women arrested were prostitutes being used in Williams's prostitution enterprise. Therefore, viewing all the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient to support Williams's conviction. *See Branch v. State*, 497 S.W.3d 588, 590-91 (Tex. App.—Eastland 2016, no pet.) (holding evidence sufficient to support defendant's conviction for aggravated promotion of prostitution).

## MOTION TO QUASH INDICTMENT

In his next issue, Williams argues the trial court erred in denying his motion to quash the indictment, resulting in the denial of his right to fair notice of the specific charged offense and preventing him from preparing for trial.[3] The sufficiency of an indictment presents a question of law. *State v. Zuniga*, 512 S.W.3d 902, 906 (Tex. Crim. App. 2017). Thus, we review a trial court's ruling on a motion to quash an indictment de novo. *State v. Ross*, 573 S.W.3d 817, 820 (Tex. Crim.

---

[3]We note that Williams has preserved this issue for appeal by filing a detailed pretrial motion to quash, which was heard and denied by the trial court.

App. 2019). "The trial court's ruling should be upheld if it is correct under any theory of law applicable to the case." *Zuniga*, 512 S.W.3d at 906.

As noted, a person commits aggravated promotion of prostitution if he (1) knowingly (2) owns, invests in, finances, controls, supervises, or manages (3) a prostitution enterprise (4) that uses two or more prostitutes. *See* TEX. PENAL CODE § 43.04(a). The indictment in this case alleged that Williams

> on or about April 5, 2019, and before the presentment of this indictment, in said county and state, did then and there knowingly own, invest in, finance, control, supervise, or manage a prostitution enterprise that used at least two prostitutes.

As a pretrial matter, Williams argued to the trial court that the indictment should be quashed because it failed to notify him which of the six possible manner and means of committing aggravated promotion of prostitution. The State responded that the indictment tracked the statutory language.

"The Texas and United States Constitutions grant a criminal defendant the right to fair notice of the specific charged offense." *Ross*, 573 S.W.3d at 820. "To provide this fair notice, the charging instrument must convey sufficient information to allow the accused to prepare a defense." *Id.* "Toward that end, chapter 21 of the Texas Code of Criminal Procedure governs charging instruments and provides legislative guidance concerning the requirements and adequacy of notice." *Zuniga*, 512 S.W.3d at 906. "With respect to indictments, article 21.02 sets out what facts must be included in an information and states, in part, that '[t]he offense must be set forth in plain and intelligible words.'" *Id.* (quoting TEX. CODE CRIM. PROC. art. 21.02(7)). Article 21.03 provides that "[e]verything should be stated in an indictment which is necessary to be proved." TEX. CODE CRIM. PROC. art. 21.03. Article 21.04 provides that "[t]he certainty required in an indictment is such as will enable the accused to plead the judgment that maybe given upon it in bar of any

prosecution for the same offense." TEX. CODE CRIM. PROC. art. 21.04. An indictment is sufficient if it

> charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment[.]

TEX. CODE CRIM. PROC. art. 21.11.

This "notice" jurisprudence requires appellate courts to engage in a two-step analysis when analyzing whether a charging instrument provides adequate notice. *Zuniga*, 512 S.W.3d at 907. "First, the reviewing court must identify the elements of the offense." *Id.* "Next, it must consider whether the statutory language is sufficiently descriptive of the charged offense." *Id.* The court of criminal appeals has recognized that "[i]n most cases, a charging instrument that tracks the relevant statutory text will provide adequate notice to the accused." *Ross*, 573 S.W.3d at 820. "But tracking the language of the statute may be insufficient if the statutory language is not 'completely descriptive' of an offense." *Id.* (quoting *Curry v. State*, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000)). Thus, "if the prohibited conduct is *statutorily defined to include more than one manner or means of commission*, then the State must, upon timely request, allege the particular manner or means it seeks to establish." *Id.* (emphasis added) (citation omitted).

As noted above, a person commits aggravated promotion of prostitution if he (1) knowingly (2) owns, invests in, finances, controls, supervises, or manages (3) a prostitution enterprise (4) that uses two or more prostitutes. *See* TEX. PENAL CODE § 43.04(a). "The term 'manner and means' refers to the actus reus of the crime." *Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012) (citation omitted). "Syntax can help identify manner and means: '[g]enerally, adverbial phrases, introduced by the preposition "by," describe the manner and means of committing the offense.'" *Id.* (quoting *Jefferson v. State*, 189 S.W.3d 305, 316 (Tex. Crim. App. 2006) (Cochran,

J., concurring)). We conclude the prohibited conduct in section 43.04(a) is statutorily defined to include more than one manner or means of commission; that is, one can commit the offense by owning, investing in, financing, controlling, supervising, or managing a prostitution enterprise. *See* TEX. PENAL CODE § 43.04(a).

The record reflects that Williams filed a pretrial motion requesting the State to allege the particular manner and means it sought to establish. After a hearing on the motion, the trial court denied Williams's motion to quash and did not require the State to allege the particular manner and means. However, because section 43.04(a) is statutorily defined to include more than one manner or means of commission, the statutory language is not "completely descriptive" of the offense, and the trial court should have granted Williams's motion to quash. *See Ross*, 573 S.W.3d at 820 (explaining that "if the prohibited conduct is statutorily defined to include more than one manner or means of commission, then the State must, upon timely request, allege the particular manner or means it seeks to establish").

However, our analysis does not end there. In determining whether an appellant received constitutionally sufficient notice of the offense to prepare a defense, we do not look solely at the language of the indictment. *State v. Moff*, 154 S.W.3d 599, 603 (Tex. Crim. App. 2004); *State v. Peterson*, 612 S.W.3d 508, 514 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd). The notice requirement "may be satisfied by means other than the language in the charging instrument." *Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003). "When a motion to quash is overruled, a defendant suffers no harm unless he did not, in fact, receive notice of the State's theory against which he would have to defend." *Id*.; *see also* TEX. CODE CRIM. PROC. art. 21.19 ("An indictment shall not be held insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant."). Thus, if the record reflects that Williams received actual notice of the State's theory

against which he would have to defend, then he suffered no harm by the trial court's failure to grant his motion to quash. *See Peterson*, 612 S.W.3d at 514-15 (holding record showed appellant had actual notice of prosecution's theory through comments made by prosecutor at motion-to-quash hearing, statements made in the prosecution's response to the appellant's motion to quash, along with other pretrial notices filed by the prosecution). Further, we note that "[t]he notice provided by the indictment in question must be examined *from the perspective of the accused in light of his constitutional presumption of innocence*." *DeVaughn v. State*, 749 S.W.2d 62, 68 (Tex. Crim. App. 1988) (emphasis added).

In its brief, the State does not point to anything in the record to show that Williams received notice of its intended theory of prosecution. The clerk's record does not reflect that the State filed a response to Williams's motion to quash. At the hearing on the motion to quash, Williams's defense counsel emphasized that the possible manner and means alleged were very different and made it impossible for him to prepare a defense:

> The confusion and the lack of notice here comes into the manner and means in which they allege that he commits the offense. We have six manner and means listed in the statute, that being owns, invests in, finances, controls, supervises, or manages, and I think it's very notable that the statute is very specific and uses the word "or" and not "and." . . . They will have to narrow this down and specify which manner and means out of the six possible options. Does he own it? Does he invest in it? Does he finance it? Does he control it? Does he supervise it or does he manage it? Or is it all of the above? But they don't state that, and that lacks specificity for my client to be able to defend against this indictment sufficiently. For us to defend against it, we have to go through and defend against each one of these manner and means, and all they have to do is pick one and go after it, but we still have to go after all six, and I think that's fundamentally unfair to my client.

The prosecutor's response to this argument was merely that the language tracked the statute. The prosecutor did not provide any specific theory he intended to pursue at trial.

At the hearing on the motion to quash, the prosecution did refer, in a conclusory fashion, to the trial court's "standing discovery order" and the State's "open file policy." However, there is

nothing in the record to indicate what information the defense had access to as a result of the "standing discovery order" and the State's "open file policy." Additionally, while the State did file notice of its intention to use "bad acts and extraneous matters," those extraneous bad acts related to three prior offenses for robbery and one previous offense for assault. The notice of extraneous bad acts appeared to not relate to any "prostitution enterprise." The facts of this case, therefore, are distinguishable from other cases where appellate courts have found the defendant did have actual notice of the State's intended theory of prosecution. *See Peterson*, 612 S.W.3d at 515 (holding "the State's various pretrial filings, considered together with the indictment's allegations that the offense of compelling prostitution by a minor occurred on or about November 3, 2016 and involved a single complainant whose identity [was] known to [the defendant], is adequate notice of the State's theory of criminal liability so that [the defendant] [could] prepare a defense"); *Buxton v. State*, 526 S.W.3d 666, 683 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (holding, in a continuous-sexual-abuse-of-child case, that the defendant had ample notice of the offense when the indictment was considered together with the probable cause affidavit and the prosecution's notices of intention to use outcry statements and extraneous offenses); *State v. Stukes*, 490 S.W.3d 571, 577 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding, in continuing-family-violence case, that the defendant "had ample notice in addition to that provided by the indictment" when the prosecution provided defense counsel with offense reports and videotapes regarding two predicate assaults).

On this record, we cannot conclude that Williams received pretrial notice of the State's theory against which he would have to defend. *See Kellar*, 108 S.W.3d at 313. Accordingly, we must reverse the trial court's judgment. *See* TEX. CODE CRIM. PROC. art. 21.19 ("An indictment shall not be held insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant.");

*see also* TEX. R. APP. P. 44.2(b) (permitting only errors that do not affect substantial rights to be disregarded).

Because (1) the trial court should have granted Williams's motion to quash the indictment and (2) the record does not reflect that Williams received pretrial notice of the State's theory against which he would have to defend, we reverse the trial court's judgment. In our previous judgment, we remanded the cause with instructions to dismiss the indictment. In its motion for rehearing, the State argues our judgment should have ordered the indictment quashed while permitting the State a period of time in which to amend in accordance with article 28 of the Texas Code of Criminal Procedure. In support, the State cites *State v. Moreno*, 807 S.W.2d 327, 329 (Tex. Crim. App. 1991). The facts in *Moreno*, however, are distinguishable as the trial court in that case agreed with the defendant that the information in a misdemeanor case should be quashed, and the issue on appeal was whether the trial court's order quashing the indictment was appealable by the State. *See id*. at 328-34. Indeed, the language in *Moreno* relied on by the State is dicta. *See id*. at 328-29.

In contrast, in *Coleman v. State*, 643 S.W.2d 124 (Tex. Crim. App. 1982), the court of criminal appeals addressed the same factual scenario we are presented with in this appeal. In that case, before trial, the "appellant filed and presented to the trial court a motion to quash the indictment, claiming therein that the indictment failed to give him sufficient notice of the meaning of the word or term 'appropriate.'" *Id*. at 125. After the trial court denied the appellant's motion, the case proceeded to a jury trial where the appellant was found guilty. *Id*. On appeal, the Dallas Court of Appeals agreed with the appellant, holding the trial court erred in failing to grant appellant's motion to quash the indictment. *Id*. The court of appeals reversed the judgment and ordered "that the indictment be dismissed." *Coleman v. State*, 629 S.W.2d 126 (Tex. App.—Dallas 1981), *aff'd*, 643 S.W.2d 124 (Tex. Crim. App. 1982). The State then appealed to the court of

criminal appeals, which held the trial court had "reversibly erred in failing to grant the appellant's trial court motion to quash the indictment." *Coleman*, 643 S.W.2d at 126. The court of criminal appeals then affirmed the judgment of the Dallas Court of Appeals, which had reversed and ordered "that the indictment be dismissed." *Id*. Given this precedent, we decline to modify our previous judgment in this appeal.

## CONCLUSION

We reverse the trial court's judgment and remand the cause with instructions to dismiss the indictment.

Liza A. Rodriguez, Justice

PUBLISH