

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00468-CR
No. 02-24-00469-CR
No. 02-24-00470-CR
No. 02-24-00472-CR

———————————————

ALLEN MARSHALL TUCKER, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 9
Tarrant County, Texas
Trial Court Nos. A40000102, A40000103, A40000104, A40000106

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

## I. Introduction

A jury convicted Appellant Allen Marshall Tucker in municipal court of violating multiple ordinances involving his properties at 11429 and 11467 Mosier Valley Road and assessed fines ranging from $100 to $1,500. He appealed to the county criminal court, which affirmed the convictions, and he now appeals to this court. We will affirm.

## II. Discussion

We begin by explaining how municipal-court-of-record cases are appealed to this court, followed by the appellate issues raised in the court below.

### A. Appeals from a municipal court of record

A municipal court of record has exclusive jurisdiction over all criminal matters arising under municipal ordinances and Class C misdemeanors. *State v. Villa*, 707 S.W.3d 263, 267 (Tex. Crim. App. 2024). Government Code Chapter 30 governs the structure and operation of municipal courts of record.[1] *Id.* Appeals from municipal courts of record are to county courts, county criminal courts, or municipal courts of appeal. *Id.*; *see* Tex. Gov't Code Ann. § 30.00014(a); *see also id.* § 30.00381(b) ("In this subchapter, 'appellate courts' means the county criminal courts of Tarrant County that have criminal appellate jurisdiction."). The county criminal court determines the appeal "on the basis

---

[1]Subchapter A, "General Law for Municipal Courts of Record," applies to each municipality listed in Chapter 30. Tex. Gov't Code Ann. § 30.00001(b)(1). Fort Worth is one of them. *Id.* § 30.00381(a).

of the errors that are set forth in the appellant's motion for new trial and that are presented in the clerk's record and reporter's record prepared from the proceedings leading to the conviction or appeal"; such an appeal "may *not* be by trial de novo." Tex. Gov't Code Ann. § 30.00014(b) (emphasis added); *see Swain v. State*, 319 S.W.3d 878, 879 (Tex. App.—Fort Worth 2010, no pet.) (observing that under Section 30.00014(b), the county criminal court may not retry the case but instead must determine the appeal based on errors shown in the municipal-court record).

In an appeal from a municipal court of record, an appellant's brief must present points of error in the same manner required for a brief on appeal to this court, and the record and the briefs "shall be limited as far as possible to the questions relied on for reversal." Tex. Gov't Code Ann. § 30.00021(a), (e). If the county criminal court affirms the municipal court's judgment, then the appellant has the right to appeal to this court if the fine assessed against him exceeds $100,[2] and the county criminal court record and briefs will constitute the record and briefs on appeal to this court,[3] with exceptions not applicable here. *See id.* § 30.00027(a)(1), (b)(1). These statutory limitations on the record and briefing "are strong indicators that the legislature intended for the review by a court

---

[2]An appellant may also appeal to this court to challenge the constitutionality of the statute or ordinance underlying his or her conviction, *see* Tex. Gov't Code Ann. § 30.00027(a)(2), but that is not an issue in this appeal.

[3]When we refer to the parties' briefs in this appeal, we thus mean the county-criminal-court briefs.

of appeals to be a second appellate review independent of the determinations made by the first reviewing court, limited to the same challenges presented to the first reviewing court regarding the municipal court's judgment." *Felts v. State*, 668 S.W.3d 69, 75 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (op. on reh'g).

## B. Tucker's issues

The City charged Tucker with six violations,[4] and the jury convicted him of five and acquitted him of one. The county criminal court affirmed the five convictions, and we have dismissed one of his appeals for want of jurisdiction because the jury assessed a fine of $100 and nothing in the record indicated that Tucker had challenged the underlying ordinance's constitutionality. *See Tucker v. State*, No. 02-24-00471-CR, 2025 WL 211332, at *1 (Tex. App.—Fort Worth Jan. 16, 2025, no pet.) (mem. op., not designated for publication); *cf.* Tex. Gov't Code Ann. § 30.00027(a). We are thus left with Tucker's challenges to four convictions.

In his brief, Tucker complained that the municipal court erred by denying his directed-verdict motion and his motions to quash and to suppress and by granting the State's motion in limine. He also challenged the evidence's legal sufficiency.[5]

---

[4]The City had actually charged Tucker many more violations but went to trial on only six of them.

[5]In his new-trial motion, Tucker raised these complaints and also challenged the evidence's factual sufficiency. The factual-sufficiency standard no longer applies in criminal cases. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)).

4

We will begin with Tucker's motions to quash because these complaints provide the framework for reviewing his directed-verdict and sufficiency challenges. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) ("We treat a point of error complaining about a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence.").

## C. Analysis

### 1. Motions to quash

A challenge to a charging instrument's sufficiency presents a question of law, which we review de novo. *State v. Ross*, 573 S.W.3d 817, 820 (Tex. Crim. App. 2019). In most cases, a charging instrument that tracks the relevant statutory text will give the accused adequate notice. *Id.* Further, a municipal-court complaint must substantially comply with the Code of Criminal Procedure's requirements for complaints. *See* Tex. Gov't Code Ann. § 30.000126; *see also* Tex. Code Crim. Proc. Ann. art. 45.019(a).

Under Code of Criminal Procedure Article 45.019, a complaint is sufficient, without regard to its form, if it substantially satisfies the following requisites: (1) it is in writing; (2) it begins with "In the name and by the authority of the State of Texas"; (3) it states the accused's name; (4) it shows that the accused has committed an offense against the law of this state or states that the affiant has good reason to believe and does believe that the accused has committed an offense against the law of this state; (5) it states the offense date as definitely as the affiant can; (6) it bears the affiant's signature or mark; and (7) it concludes with the words "Against the peace and dignity of the

5

State." Tex. Code Crim. Proc. Ann. art. 45.019(a). If the offense charged is an offense under a municipal ordinance only, "it *may* also conclude with the words 'Contrary to the said ordinance.'" *Id.* (emphasis added). If the complaint is filed in municipal court, it must allege that the offense was committed within the territorial limits of the municipality in which the complaint is made. *Id.* art. 45.019(c).

The City filed the following citations at issue in these four appeals: GA081592, GA087599, GA081591, and GA081589. In his motions to quash the complaints in GA081592[6] and GA087599[7] (solid-waste violations, 11467 Mosier Valley Road) and in GA081591[8] (solid-waste violation, 11429 Mosier Valley Road), Tucker argued that the complaints were "too vague, indefinite, and uncertain to charge an offense." Tucker also filed a motion to quash in GA081589,[9] a zoning violation pertaining to excavation

---

[6]The municipal court cause number for this citation is 2023 OR 000321. The county criminal court cause number is A40000103. The cause number in this court is 02-24-00469-CR.

[7]The municipal court cause number for this citation is 2023 OR 000987. The county criminal court cause number is A40000102. The cause number in this court is 02-24-00468-CR. We note that there appears to be a typo in the complaint and elsewhere in the record as to the citation number, but the judgment and reporter's record clarify that this is the correct citation number.

[8]The municipal court cause number for this citation is 2023 OR 000300. The county criminal court cause number is A40000104. The cause number in this court is 02-24-00470-CR.

[9]The municipal court cause number for this citation is 2023 OR 000296. The county criminal court cause number is A40000106. The cause number in this court is 02-24-00472-CR.

at 11429 Mosier Valley Road, on the same bases, but at the hearing, the municipal court identified this case by its municipal-court number, 2023 OR 000296, and stated, "I don't see any motions filed on this one," and then repeated, "[O]n 2023-OR-000296, there is no motion to quash." Tucker's counsel did not object and did not obtain a ruling on that motion, failing to preserve it for review. *See* Tex. R. App. P. 33.1; *Marks v. State*, 525 S.W.3d 403, 410 n.4 (Tex. App.—Houston [14th Dist.] 2017), *aff'd*, 560 S.W.3d 169 (Tex. Crim. App. 2018).

As required by statute, each complaint began with "In the name and by the authority of the State of Texas," concluded with "Against the peace and dignity of the State," and alleged that the offense was committed within Fort Worth's territorial limits. *See* Tex. Code Crim. Proc. Ann. art. 45.019(a), (c). The complaint in GA081592 alleged:

> I, the undersigned affiant, do solemnly swear that I have good reason to believe and do believe that ALLEN TUCKER . . . on or about 01/19/2023 and before the making and filing of this complaint . . . [d]id then and there knowingly deposit, or allow to accumulate, solid waste, to wit: TIRES APPLIANCES CAR PARTS WOODEN CRATES, on private property located at 11467 MOSIER VALLEY ROAD[.]

The complaint in GA087599 alleged:

> I, the undersigned affiant, do solemnly swear that I have good reason to believe and do believe that ALLEN TUCKER . . . on or about 03/10/2023 and before the making and filing of this complaint . . . [d]id knowingly accumulate, or allow the accumulation of one or more of the following: damaged merchandise; used or discarded building materials; used, discarded or broken automotive parts or equipment; or any of the following broken, inoperable, or discarded items: household furnishings, appliances, machines, tools, boxes, cartons, play equipment, or toys; to wit: TIRES, APPLIANCES, CAR PARTS, AND WOODEN CRATES, on property located at 11467 MOSIER VALLEY[.]

And the complaint in GA081591 alleged:

> I, the undersigned affiant, do solemnly swear that I have good reason to believe and do believe that ALLEN TUCKER . . . on or about 01/19/2023 and before the making and filing of this complaint . . . [d]id then and there knowingly deposit, or allow to accumulate, solid waste, to wit: TIRS [sic], WOODEN CRATES, on private property located at 11429 MOSIER VALLEY ROAD[.]

At the hearing on the motions to quash, Tucker allowed the municipal court to group his solid-waste complaints together after the municipal court noted that Tucker had used "ticket numbers" instead of "case numbers" and observed that "one ticket can have several violations," making it difficult to determine which motion went with which case. Tucker also allowed the municipal court to narrow his complaints to: (a) failure to state "contrary to said ordinances," (b) failure to state an offense, and (c) vagueness. As to vagueness, at the hearing, Tucker argued that the GA087599 complaint stated "11467 Mosier Valley" and not "11467 Mosier Valley *Road.*" [Emphasis added.]

The municipal court denied the motions to quash in all three cases, stating that the complaints listed specific offenses, that the lack of "Road" did not make the address vague, and that the statute does not require that the complaints say "contrary to the said ordinance."

In his brief, Tucker argued that the State's complaints provided no notice because they failed to allege all the material elements of the offenses, including a culpable mental state and the manner of violating the ordinances. He also complained

8

that none of them concluded with the words "contrary to the said ordinance" under Article 45.019.[10]

The county criminal court did not err by overruling this issue because the "contrary to the said ordinance" language is not mandatory. *Compare* Tex. Gov't Code Ann. § 311.016(1) (stating that "may" creates "discretionary authority or grants permission or a power"), *with id.* § 311.016(2) (stating that "shall" imposes a duty), *id.* § 311.016(3) (stating that "must" creates or recognizes a condition precedent), *and* Tex. Code Crim. Proc. Ann. art. 45.019(a)(1)–(7) (stating items that "must" be in a complaint). And the complaints stated everything necessary to be proved. *See State v. Zuniga*, 512 S.W.3d 902, 906 (Tex. Crim. App. 2017) (discussing what facts must be included in an information). That is, the complaints set forth the culpable mental state (knowingly), the alleged violations, when the violations occurred, and where, along with the other Article 45.019 requirements, notwithstanding the obvious typo—TIRS instead of TIRES—in the GA81791 complaint.[11] *See id.*

_____

[10]To the extent that we have been able to decipher Tucker's arguments in the county criminal court, we have addressed them. But, particularly as to the motion-to-quash issue, his brief lacks the baseline coherency that we generally expect of a brief in this court. *Cf.* Tex. Gov't Code Ann. § 30.00021(a); Tex. R. App. P. 38.1(i) (requiring the brief to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

[11]At the hearing, Tucker's counsel argued, "I don't know what that word is, the one before the wooden crates." The municipal court was entitled to find this argument disingenuous as, presumably, the county criminal court did and as we do, considering Tucker's counsel's subsequent argument that "[w]e don't even really know what is . . .

9

## 2. Sufficiency

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018).

### a. Ordinances

Tucker sought a directed verdict, complaining that the State had failed to offer into evidence the ordinances at issue and relying on *Martin v. State*, 731 S.W.2d 630 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd), and a Court of Criminal Appeals case cited therein, *Howeth v. State*, 645 S.W.2d 787 (Tex. Crim. App. 1983).

*Martin* and its predecessor—each involving a speeding violation—are inapposite. In *Martin*, the appellant was convicted of speeding and fined $55 in municipal court.

---

a good tire or a bad tire, because there's no description as to why you're saying that 'by me having tires, I'm wrong. I'm violating the law.'"

731 S.W.2d at 631. He appealed to the county criminal court at law for a de novo trial,[12] was found guilty, and was fined $101. *Id.* In the court of appeals, he complained that the county criminal court at law had erred by denying his directed-verdict motion because the State had failed to prove and introduce into evidence the municipal traffic ordinance. *Id.* The appellate court reversed the conviction because "[t]he ordinance was not introduced into evidence, there was no agreement to stipulate to the contents of the municipal ordinance, nor was there a request that judicial notice be taken of the ordinance." *Id.* (relying on *Howeth*, 645 S.W.2d at 788).[13]

As the municipal court here explained to Tucker's defense attorney, a charge of speeding—unlike the instant charges—relies not only on state law but also on the applicable city ordinance because state law provides that any speed in excess of the

---

[12]*Martin* was issued on April 30, 1987, *see* 731 S.W.2d at 630, and the statute that disallows a trial de novo in a municipal-court appeal became effective several months later, on August 31, 1987. *See* Act of June 18, 1987, 70th Leg., R.S., ch. 811, § 1, 1987 Tex. Gen. Laws 2809, 2812 (amended 1997, 1999, 2005, 2017, 2019) (current version at Tex. Gov't Code § 30.00014).

[13]In *Howeth*, the Court of Criminal Appeals held the evidence insufficient on a speeding conviction when the municipal ordinance was not admitted into evidence but rather stipulated to by the parties. 645 S.W.2d at 788–89. The court specifically restricted its remarks about proving up an ordinance to when "the prosecution is initiated under a municipal ordinance and a conviction occurs in the municipal court, but the defendant appeals his conviction to a county court at law *and receives in that court a trial de novo*." *Id.* at 788 (emphasis added); *cf.* Act of June 18, 1987, 70th Leg., R.S., ch. 811, § 1, 1987 Tex. Gen. Laws at 2812 (amended 1997–2019). The court also noted, "The municipal court, of course, may take judicial notice of the ordinances of its municipality." *Howeth*, 645 S.W.2d at 788.

posted speed limit is prima facie evidence of unreasonable speed, and the city ordinance determines the posted speed limit. *See* Tex. Transp. Code Ann. § 545.352(a) ("A speed in excess of limits . . . under another provision of this subchapter is prima facie evidence that the speed is not reasonable and prudent and that the speed is unlawful."); *see also id.* § 545.356(c) ("A prima facie speed limit that is altered by the governing body of a municipality . . . is effective when the governing body erects signs giving notice of the new limit and at all times or at other times as determined.").

Because these cases were not speeding cases, and because this is an appeal from a trial in municipal court, not a trial de novo in the county criminal court, the municipal court did not err by not entering the ordinances into evidence. *See generally* Tex. R. Evid. 204(b)(1), (d) (providing that the court may take judicial notice sua sponte of an ordinance, that "[t]he court—not the jury—must determine municipal and county ordinances," and that the court's determination must be treated as a ruling on a question of law). Instead, the municipal court included the pertinent ordinances in the jury charge.[14] *See* Tex. Code Crim. Proc. Ann. art. 36.14 (requiring the charge to set forth "the law applicable to the case"). The county criminal court did not err by overruling Tucker's directed-verdict issue.

---

[14]As set out below, the ordinances' applicable language also appeared on the violation notices that were sent to Tucker and admitted into evidence.

### b. Evidentiary review

In these four appeals, *see* II.B., *supra*, Tucker argued that the evidence is insufficient to support the convictions.

Two witnesses—Fort Worth Code Officer Ann Mahoney and Tucker—testified at trial. Mahoney, who had eleven years' experience as a Fort Worth commercial code officer, identified Tucker in court as the owner of the two properties[15] at issue within Fort Worth's territorial limits, 11429 and 11467 Mosier Valley Road. Each complaint alleged that Tucker had committed the offenses knowingly. *See* Tex. Penal Code Ann. § 6.03(b) (stating that a person "acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist" and acts "knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result").

### (1) Complaints

As to 11429 Mosier Valley Road, the jury convicted Tucker of having, on or about January 19, 2023, knowingly deposited or allowed to accumulate solid waste (tires and wooden crates),[16] and of having, on or about January 19, 2023, unlawfully,

---

[15]Because Tucker was acquitted of charges involving a third property, we will not include it in our recitation.

[16]The jury assessed a $1,500 fine for the violation.

knowingly, as the person in control of the premises at 11429 Mosier Valley Road, violated the comprehensive zoning ordinance by using property zoned agricultural-use for the continued use of excavation.[17]

As to 11467 Mosier Valley Road, the jury convicted Tucker of having, on or about January 19, 2023, knowingly deposited or allowed to accumulate solid waste (tires, appliances, car parts, and wooden crates),[18] and having, on or about March 10, 2023, knowingly accumulated or allowed the accumulation of discarded items (tires, appliances, car parts, and wooden crates).[19]

### (2) Evidence

#### a. Mahoney

During Mahoney's testimony, the municipal court admitted State's Exhibit 1, a zoning map showing that 11429 Mosier Valley Road was zoned "AG" for agricultural use. Mahoney testified that the "AG" zoning meant that "it's agricultural purposes only, crops, farm animals," that "[a]ny equipment they could have . . . would involve farming," and that excavation was not considered an agricultural use. She received her first excavation complaint about the 11429 property on December 7, 2022, from an upset neighbor. Mahoney went out to the properties that day. On the 11467 property,

---

[17]The jury assessed a $1,000 fine for the violation.

[18]The jury assessed a $250 fine for the violation.

[19]The jury assessed a $1,000 fine for the violation.

she saw junk motor vehicles, travel trailers, old appliances, and tires, and on the 11429 property, she saw a trailer, some defunct vehicles, an accumulation of tires and wooden crates, and what appeared to be dirt excavation. She called Tucker to discuss the violations and sent violation notices—State's Exhibits 2 and 3—to him that day.

State's Exhibit 2 listed two violations on the 11467 property; one of the violations was accumulation of solid waste, for which the notice cited Fort Worth City Code Chapter 16, Article XII, Section 16-294.[20] State's Exhibit 3 listed a single violation on the 11429 property—maintaining, using, or allowing a use contrary to the designated permitted use—for which the notice cited Fort Worth City Code Appendix A, Chapter 4, Article 6, Section 4.603.[21] This notice added, "Property must be maintained free of all unnecessary items. [L]and must be used for purposes of AG zoning." Both notices had a December 14, 2022 compliance date, warned that failure to correct the violation before that date could result in a fine of up to $2,000 per day, identified Mahoney, and provided her phone number and e-mail address.

---

[20]The notice set out the following ordinance language: "No person shall deposit or allow to accumulate on private property, or discharge from any place onto private or public property in the city any dead animal, human or animal waste, foul water, solid waste[,] or any noxious liquid waste."

[21]The notice set out the following language, "A person commits an offense if the person maintains, uses or allows to be used any property with a use that is contrary to the designated permitted use."

15

Mahoney testified that property owners usually receive ten days to abate a violation but can request additional time "as long as they're making progress within that time frame." She visited the properties again on December 27, saw no changes, and left Tucker a voice mail but refrained from issuing any citations at that point because code officers first "try to work with people . . . and communicate and send out another violation notice." She spoke with Tucker by phone on January 7 and visited in person again on January 10. Because Tucker had made minimal progress, she told him by phone what needed to be done and then followed up with him by text. She also discussed with him that he could not excavate on the 11429 property because of the AG zoning, and she testified that he had not expressed any confusion about what she meant.

On January 19, Mahoney saw dirt excavation—a truck hauling dirt away from the 11429 property—and wooden crates, tires, and "other unnecessary items" that had not been removed from the property and that could not be stored there under the AG zoning. She issued the first set of citations that day. She identified State's Exhibits 5 and 6, which were admitted without objection, as photos she had taken on January 19, showing "where they're excavating the dirt" on the 11429 property. The photos, date-stamped January 19, 2023, show heavy machinery and large mounds of dirt.

On the same day, Mahoney saw tires, appliances, car parts, and wooden crates on the 11467 property, and she testified that the property's zoning only allowed "[o]utside storage of construction vehicles and trailers" and that she had previously

16

spoken with Tucker about these limitations before issuing citations. State's Exhibit 10—photos that Mahoney took of the 11467 property on January 19—were admitted without objection and show a travel trailer and other miscellaneous objects.

Mahoney visited the properties again on January 27, observed no changes, and sent Tucker notices of violation—State's Exhibits 7 and 8—on February 13. State's Exhibit 7 addressed the 11467 property, and State's Exhibit 8 addressed the 11429 property; both notices listed the same violations as the earlier notices and bore the December 14, 2022 compliance date, which Mahoney explained occurred from the notices' having been automatically generated.

Mahoney visited the properties on March 1 and sent another notice of violation—State's Exhibit 9—regarding the 11429 property. The notice listed the same earlier violation and the same December 14, 2022 compliance date but added, "Remove all unnecessary items from the property. Continue to cease any operations of excavating materials from the property." She issued additional citations after visiting the properties on March 10.

Regarding her March 10 visit, as to the 11467 property, Mahoney saw trailers, junk vehicles, appliances, tires, and wooden crates that violated the zoning ordinances because storing these items on the property was contrary to the zoning. She stated that she had spoken with Tucker about his needing to remove the items and had explained to him, before issuing the citations, what was allowed on each property.

17

During cross-examination, Mahoney agreed that in December 2022, Tucker had told her that he needed additional time and acknowledged that he had made "minimal" progress during that time in abating the violations. She was unsure whether some of the items described as waste were items that he used in his business. During redirect, Mahoney clarified that she had cited Tucker not for tires that were on vehicles but for tires that were not on vehicles and repeated that the 11467 property's zoning allowed outside storage of construction vehicles and trailers only.

### b. Tucker

Tucker testified that his company, which had been in business for 47 years, sells sand, gravel, and mulch compost to construction sites. He admitted that he had spoken with Mahoney in December and asked for some time because it had been rainy, which made things "real muddy" and difficult to move. He also testified that he had been shorthanded because of the holidays and the pandemic. He identified a photo from the 11467 property as a travel trailer that his company used on construction sites, and the municipal court admitted the photo as Defense Exhibit 1. He also identified from the photo a "no trespassing" sign on the fence post.

Tucker claimed that he had called Mahoney but could not reach her; he had wanted to ask her about the "unnecessary items" on the notices, and he complained that she had issued a citation listing crates and pallets, stating, "[S]ome of our supplies came in crates and they came in pallets and . . . our pallets had deposits on them, so we just couldn't throw the pallets away. . . we wanted to take them back and get our deposits

back." Tucker claimed that he had tried to be compliant and that there were times when Mahoney was scheduled to meet with him and then did not show up.

During cross-examination, when asked about what progress he had made after December 2022 to bring the properties into compliance, Tucker replied, "[W]e spent most of our time moving some truck parts, . . . we moved the boat off, we removed some dirt that we shouldn't have to remove." He complained, "[W]e got rid of the tires that we needed," explaining that those had been spare tires for their trucks and that they had been storing them outside because they did not have room inside, but he also testified that he had not removed the tires because they were necessary. He also claimed that Mahoney never explained the violations and "just wrote the tickets."

As to excavation, the following colloquy occurred between Tucker and the prosecutor:

> Q. Is it your testimony today that excavation is allowed on 11429 Mosier Valley?
>
> A. What she cited [u]s f[o]r, yes.
>
> Q. You're claiming that in a zone, agricultural, excavation is allowed?
>
> A. We were loading material that we hauled in there.
>
> Q. Mr. Tucker, I'm talking specifically about excavation. Is it your testimony that it is allowed on property zone[d] agricultural?
>
> A. We weren't excavating, we loaded material.
>
> Q. Mr. Tucker, that wasn't my question. Are you stating that it is allowed on the property?

A. No. Excavation's not allowed. We haul materials into that site.

When the prosecutor showed Tucker State's Exhibit 5, he agreed that he saw holes on the property but nonetheless claimed that the property was not being used for excavation.

### (3) Application

Regarding the 11429 Mosier Valley Road solid-waste charge, Mahoney testified that on December 7, she saw there—among other things—an accumulation of tires and wooden crates. During her January 19 visit to the 11429 property—before issuing any citations—she saw wooden crates and tires, among other things, that had not been removed and that could not be stored there under the AG zoning. The evidence suffices to support Tucker's conviction on this charge because the jury was entitled to believe Mahoney's testimony, to consider the notices she sent to Tucker before issuing any citations, to disbelieve Tucker's testimony about the notices' lack of clarity, and to believe that he had continued to knowingly use the 11429 property to store wooden crates and spare tires based on his testimony about his pallet deposits and about having needed the tires but lacking indoor space for them.

Regarding the 11429 Mosier Valley Road zoning-violation charge based on excavation, Mahoney testified that she had received a complaint about excavation on the property from an upset neighbor on December 7, and that she visited the property that day and saw what appeared to be excavation. When she visited the property again on January 19—before issuing the citation—she saw dirt excavation and took photos

20

of it. She explained "AG" zoning to the jury and explained that excavation was not considered an agricultural use. The evidence suffices to support Tucker's conviction on this charge because the jury was entitled to believe Mahoney's testimony and to consider the notices she sent to Tucker before issuing any citations, her January 19 photos showing excavation, and Tucker's acknowledgment that excavation was not allowed on the 11429 property to conclude that he had knowingly excavated on the property notwithstanding the city's notices. The jury was likewise entitled to disbelieve Tucker's assertion that he had only been loading material on the 11429 property and not excavating in violation of the AG zoning.

Regarding the 11467 Mosier Valley Road solid-waste and accumulation charges, Mahoney testified that on December 7, she saw on the property junk vehicles, travel trailers, old appliances, and tires. She visited the property again on December 27 and saw no change, and she saw only minimal progress on January 10. During her January 19 visit—before issuing citations—she saw tires, appliances, car parts, and wooden crates on the property, and her photos were admitted into evidence. She saw no changes on January 27 and sent additional notices of violation. When she visited again on March 10, she again saw trailers, junk vehicles, appliances, tires, and wooden crates in violation of the zoning, even though she had explained to Tucker what was allowed on the property.

The evidence suffices to support Tucker's convictions on these charges because the jury was entitled to believe Mahoney's testimony, to consider the notices she sent

21

to Tucker before issuing any citations, to consider her January 19 photos of the property, and to consider Tucker's testimony during cross-examination that he had removed a boat and some dirt—not items upon which the notices and citations were based—to conclude that he had knowingly allowed the listed items to accumulate despite ample opportunity to remove them.

Based on the above, the county criminal court did not err by overruling this issue.

### 3. Suppression

Tucker complained that the municipal court should have suppressed all the evidence because Mahoney had unlawfully entered his property multiple times without a warrant or his consent.

#### a. Tucker's motions to suppress

Tucker did not file a motion to suppress in GA081592 (the January 19 citation for solid waste on the 11467 property) or in GA081589 (the January 19 citation for excavation on the 11429 property); accordingly, he did not preserve these complaints for review.[22] *See* Tex. R. App. P. 33.1. He did, however, file suppression motions in

---

[22]Further, during trial, when the prosecutor offered State's Exhibits 5, 6, and 10—Mahoney's January 19 photos of the 11429 and 11467 properties—and the municipal court asked defense counsel if there were any objections, Tucker's counsel replied, "No, Your Honor. No objections." *See Thomas v. State*, 408 S.W.3d 877, 885–86 (Tex. Crim. App. 2013) (stating as to suppression and a subsequent statement of "no objection," if the appellate court "simply cannot tell [from the record] whether an abandonment [of the suppression motion] was intended or understood, then, consistent with prior case law, it should regard the 'no objection' statement to be a waiver of the earlier-preserved error").

GA087599 (the March 10 citation for solid waste on the 11467 property) and in GA081591 (the January 19 citation for solid waste on the 11429 property) and obtained a pretrial ruling on them.

In both motions, he complained that Mahoney's unlawful entry onto his private property had violated his federal and state constitutional rights; in his motion in GA087599, he complained specifically about her actions "on or about 1/19/2023, 3/29/2[0]23, 4/17/2023, 5/02/2023, and 5/22/23," and in his motion in GA081591, he complained specifically about her actions "on or about 3/29/2[0]23, 04/17/2023, 05/02/2023, 05/22/23[,] and 06/07/2023." Among other things, in his boilerplate motions he sought to suppress "[a]ll testimony regarding what the Code Enforcement Officer observed . . . resulting from the illegal intrusions on the Defendant's private property."

### b. Suppression hearing

Mahoney was the only witness during the suppression hearing. During Tucker's questioning, she stated that she went onto Tucker's properties without his permission or consent on January 19, 2023; March 29, 2023; April 17, 2023; May 2, 2023; and May 22, 2023, but she also stated that she was not aware that she did not have his consent to be on his property. Mahoney stated that she did not see any "no trespassing" signs when she was there. She agreed that she had been on his property for code violations and not to do business. She flatly denied that Tucker "told [her] from the very beginning that he did not want [her] on his property[.]"

23

During the prosecutor's examination, Mahoney testified that Tucker's properties were commercial, that the gate had been open during business hours during her January–May 2023 visits, that no employee had asked her to leave during that time, and that she could see some of the violations from the public right of way. Before visiting, she would call Tucker to see if he would meet her there, and he did so "a few times"; on June 13, 2023, however, he had an employee tell her that he did not want her on the property, and she left immediately. After June 13, 2023, the only time she went on the properties was when Tucker was with her.

At the hearing's conclusion, Tucker argued that all the evidence should be suppressed because Mahoney had unlawfully entered the property. The prosecutor responded that Mahoney had been allowed to enter a commercial business's property during business hours when she did not see any "no trespassing" signs and the gates were open and that she had left immediately the only time an employee told her that she was not allowed on the property.

### c. State's response

After the hearing, but presumably before the municipal court signed the orders denying the motions, the State filed a response, asserting that Tucker had no reasonable expectation of privacy in the items or conditions seen in plain view outside his business during operating hours; the search was reasonable pursuant to consent, which Mahoney, in good faith, believed she had, and she immediately left when consent was revoked; and there was no testimony that Mahoney entered a portion of the property

24

where Tucker had a reasonable expectation of privacy, such as a back room or employee-only area.

### d. Analysis

Tucker argued that the municipal court had erred by denying his suppression motions, relying on his interpretation of Mahoney's testimony.

### (1) Standard of review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Because the trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony, *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007), we defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor, *Martinez*, 570 S.W.3d at 281. When—as here—the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we infer the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). We then review the trial court's legal

ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

### (2) Applicable law

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. The owner or operator of a business has an expectation of privacy in commercial property that society is prepared to consider reasonable, and the expectation exists not only as to traditional police searches conducted for the gathering of criminal evidence but also as to administrative inspections designed to enforce regulatory statutes. *New York v. Burger*, 482 U.S. 691, 699–700, 107 S. Ct. 2636, 2642 (1987); *State v. Weaver*, 349 S.W.3d 521, 526–27 (Tex. Crim. App. 2011). But commercial premises are not as private as residential premises, and various investigative procedures can be directed at commercial premises without the conduct's constituting a Fourth Amendment search because a government agent—even though motivated by an investigative purpose—is as free as the general public to enter premises "open to the public" during business hours and then to note objects in plain view. *Weaver*, 349 S.W.3d at 527. For actions to not constitute a Fourth Amendment search, the state actor must remain in the portion of the premises that is open to the public. *Id.*

The State raised consent. Although consent must be positive, it may be given orally or by action, or it may be shown by circumstantial evidence. *Id.* at 526. The validity of an alleged consent to search is a question of fact to be determined from the totality

of the circumstances. *Id.* Under Texas law, the State must prove voluntary consent by clear and convincing evidence. *Id.* The clear-and-convincing burden requires the State to show that the consent given was positive and unequivocal and there must not be duress or coercion, actual or implied. *Id.*

The State also raised the plain-view doctrine. This doctrine requires that (1) the law-enforcement official must lawfully be where the object can be plainly viewed, (2) the incriminating character of the object in plain view must be immediately apparent to the official, and (3) the official must have the right to access the object. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009); *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). In determining whether an officer had a right to be in a certain place, an essential predicate is that "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton v. California*, 496 U.S. 128, 136, 110 S. Ct. 2301, 2308 (1990); *Walter*, 28 S.W.3d at 541.

### (3) Application

Mahoney entered Tucker's commercial premises without a warrant but testified that during her visits, she entered the premises during business hours through an open gate; that until her June 2023 visit, she was not told to leave the premises; and that when she was told to leave during that June 2023 visit, she did so, and thereafter, she went on the properties only when Tucker was with her. As the factfinder, the municipal court was entitled to find Mahoney's testimony credible, to find that she acted with the same consent that any member of the public would have had to enter the premises during

27

business hours until her June 2023 visit, and thus to determine that Tucker's rights had not been violated because no Fourth Amendment search had occurred. The county criminal court did not err by overruling this issue.

### 4. Motion in limine

Tucker complained that the municipal court erred by granting the State's motion in limine to exclude evidence involving his property at 11415 Mosier Valley Road. A motion in limine is a preliminary matter and normally preserves nothing for appellate review. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008). For an error to be preserved as to the subject of a motion in limine, an objection must be made at the time the subject is raised during trial. *Id.*

Before the trial began, the State moved to exclude any mention of potential settlements between the parties and of previously dismissed citations, and Tucker objected that this went "into the events that are part and parcel of the manner and the means by which these alleged violations occurred" because "they [the City] made a mistake." The municipal court granted the motion in limine as to the previously dismissed citations but told Tucker's counsel, "[Y]ou can always approach before you -- if you want to get into any of that, you can always approach before you get into that and we can talk about it then." Tucker then objected to the exclusion of "any settlement discussions [that] do include any actions . . . that [he] made to comply or to remove items from the property that may have been part of these allegations." The municipal court responded, "Well, . . . like I said, when -- if you want to ask about that, and it

28

could get into these subjects, then you can just ask to approach before we start . . . that line of questioning."

During trial, Tucker's counsel never asked to approach the bench during either witness's testimony to attempt to admit any evidence about the above subjects, and Tucker's counsel made no offers of proof or a formal bill of exception, preserving nothing to review.[23] *See id.*; *see also* Tex. R. App. P. 33.1(a) (explaining preservation of error), 33.2 (setting out procedure to "complain on appeal about a matter that would not otherwise appear in the record"); Tex. R. Evid. 103(a)(2) (addressing offers of proof).[24] The county criminal court did not err by overruling this issue.

---

[23]During Mahoney's cross-examination, Tucker's counsel asked about "other violations that [she had] alleged to have seen"—in the context of 11415 Mosier Valley Road—and the prosecutor asked to approach. After a brief, unrecorded conference, the municipal court stated, "I'll allow it for those limited purposes, but not going [into] that other citation." When cross-examination resumed, Mahoney admitted to a mistake.

During Tucker's direct testimony, the municipal court sustained the prosecutor's objection to leading when Tucker's counsel asked a series of questions about the 11415 property, and Tucker answered "yes" to each: "[D]id you remove items from 11415?" "[D]id you later find out that those items were not necessary to be removed?" and "Because there had been a mistake made . . . isn't that correct?" Tucker's counsel did not approach the bench to ask about going into the alleged mistakes, to reframe the questions to avoid leading, or to proffer any evidence of the alleged mistakes to secure a ruling.

[24]After the municipal court repeatedly sustained the prosecutor's objections to Tucker's counsel's references during closing arguments that "mistakes were made by the State," and instructed the jury to disregard, Tucker's counsel asked to approach "because [she] thought [the court] said [they] could approach if [they] got into those areas." The municipal court replied that it was too late—evidence was closed, and the

29

## III. Conclusion

Having found no errors in the county criminal court's review, we affirm its judgments.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 26, 2025

---

parties were making closing arguments—and reminded counsel that closing arguments "are a summation of what was presented during the trial."